UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARL ROOT,

Plaintiff,

-against-

JARED LOUCKS, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

19-CV-03093 (PMH)

PHILIP M. HALPERN, United States District Judge:

Carl Root ("Plaintiff"), a police officer with the Rochester Police Department in New Hampshire, and employed previously by the New York City Police Department ("NYPD"), brings this action under 42 U.S.C. § 1983 against Sergeant Jared Loucks ("Loucks") and Officer Christopher Orengo ("Orengo," and together, "Defendants"), both of the Town of Wallkill Police Department, for false arrest. (Doc. 1, "Compl."). Defendants filed their Answer on May 31, 2019. (Doc. 13). This matter was reassigned to me on March 17, 2020.

Following the close of discovery, during a status conference on August 25, 2020, the Court granted Defendants leave to file a motion for summary judgment. Defendants served their motion for summary judgment under Federal Rule of Civil Procedure 56 on December 7, 2020. (Doc. 27; Doc. 28, "Def. Br."). Plaintiff's opposition to the motion was served on January 21, 2021. (Doc. 31). Defendants' reply was served on February 4, 2021 (Doc. 36), and all motion papers were filed that day.

For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment.

**BACKGROUND**

The facts recited herein are drawn from the Complaint, Plaintiff's responses to Defendants' Rule 56.1 Statement (Doc. 35, "Def. 56.1 Stmt."), Defendants' responses to Plaintiff's "Additional Facts" (Doc. 37, "Pl. 56.1 Stmt."), the Declaration of James A. Randazzo in Support (Doc. 29, "Randazzo Decl.") together with the exhibits annexed thereto,[1] the Affirmation of Christopher D. Watkins in Opposition (Doc. 32, "Watkins Decl.") together with the exhibits annexed thereto,[2] the Declaration of Carl Root in Opposition (Doc. 33, "Root Decl."), and the Declaration of Joann Root in Opposition (Doc. 34).

Plaintiff was an NYPD sergeant with nearly thirty years of distinguished service. (Pl. 56.1 Stmt. ¶ 1). On March 25, 2018, while off-duty, Plaintiff was with his wife in his personal vehicle at a shopping mall in Middletown, New York. (*Id.* ¶ 2; Def. 56.1 Stmt. ¶ 33). Plaintiff observed a

[1] The exhibits labeled "A" through "Q" include: (1) the transcript of the June 9, 2020 deposition of Plaintiff (Doc. 29-1, "Pl. Tr."); (2) the transcript of the June 16, 2020 deposition of Loucks (Doc. 29-2); (3) video surveillance footage ("Ex. C."); (4) additional video surveillance footage ("Ex. D"); (5) the Town of Wallkill Police Department incident report (Doc. 29-5); (6) the New York State incident report (Doc. 29-6); (7) the Declaration of Loucks (Doc. 29-7, "Loucks Decl."); (8) the New York State Arrest Report (Doc. 29-8); (9) the Misdemeanor Information charging Plaintiff with violating New York State Penal Law § 121.11(a) (Doc. 29-9, "Information"); (10) the statement by Kevin J. Greulich to the Town of Wallkill Police Department dated March 25, 2018 (Doc. 29-10, "Greulich Stmt."); (11) the transcript of the June 16, 2020 deposition of Orengo (Doc. 29-11); (12) the statement by Zachary Rizzo to the Town of Wallkill Police Department dated March 25, 2018 (Doc. 29-12, "Rizzo Stmt."); (13) a sworn statement of Zachary Rizzo dated June 29, 2018 (Doc. 29-13); (14) the NYPD memo from Duty Captain to First Deputy Commissioner concerning the "Arrest and Suspension of Off-Duty Sergeant Carl Root . . ." (Doc. 29-14, "NYPD Mem."); (15) the Certificate of Disposition dated May 21, 2019 (Doc. 29-15); (16) the transcript of the June 29, 2018 proceedings before Hon. Peter W. Green, Town of Wallkill Justice Court (Doc. 29-16, "Just. Ct. Tr."); and (17) a copy of the Complaint in this matter. The video surveillance footage marked as Exhibits C and D was provided to the Court on a DVD. Citations to documentary exhibits correspond to the pagination generated by ECF; citations to the videos correspond to the timestamps generated by Windows Media Player.

[2] The exhibits labeled "1" through "4" include: (1) the Incident Detail Report last updated on June 27, 2018 (Doc. 32-1 at 1-4); (2) the statement by Zachary Rizzo to the Town of Wallkill Police Department dated March 25, 2018 (Doc. 32-1 at 5-6, "Rizzo Stmt."); (3) the Case Supplemental Narrative Report of Loucks (Doc. 32-1 at 7-8); and (4) the New York State incident report (Doc. 32-1 at 9-11). Plaintiff also submitted to the Court via flash drive, as Exhibit 5, the "East Entrance" video surveillance footage ("Ex. 5"). Citations to the video correspond to the timestamps generated by Windows Media Player.

young man, later identified as Zachary Rizzo ("Rizzo"), standing near a black pick-up truck, pushing shopping carts into the shopping mall's perimeter road in front of moving vehicles. (Pl. 56.1 Stmt. ¶ 3). Plaintiff observed that Rizzo almost struck a vehicle and caused it to swerve into the oncoming lane. (*Id.* ¶ 4). Plaintiff believed that Rizzo, creating a substantial risk of serious physical injury, was engaging in Reckless Endangerment under N.Y. Penal Law § 120.20. (Pl. 56.1 Stmt. ¶ 5). Plaintiff told his wife to call 9-1-1. (*Id.* ¶ 6). The 9-1-1 dispatcher asked for the truck's license plate number, so while Plaintiff's wife was on the phone with 9-1-1, Plaintiff drove toward the black truck. (*Id.* ¶ 7). Rizzo then jumped into the truck, which drove over an embankment and sped away, heading toward a neighboring shopping plaza. (*Id.* ¶ 8; Def. 56.1 Stmt. ¶ 30). Plaintiff, who had observed the truck turn towards the direction of the shopping plaza, drove through the Kohl's parking lot at that shopping plaza to look for the black truck. (Def. 56.1 Stmt. ¶¶ 31-32; Pl. 56.1 Stmt. ¶ 10). When Plaintiff was near Starbucks and Burlington, he saw the truck and drove toward it to try to record its license plate. (Def. 56.1 Stmt. ¶ 36; Pl. 56.1 Stmt. ¶ 11). The driver of the truck then drove off, leaving Rizzo behind standing outside in the parking lot. (Def. 56.1 Stmt. ¶¶ 37-39; Pl. 56.1 Stmt. ¶ 12).

Plaintiff exited his vehicle to apprehend Rizzo and have him arrested, either as the arresting officer or as the complaining witness. (Def. 56.1 Stmt. ¶¶ 41-42; Pl. 56.1 Stmt. ¶ 13). However, Rizzo ran off through a breezeway between Kohl's and Burlington. (Def. 56.1 Stmt. ¶ 43). Plaintiff ran after Rizzo, who attempted to evade Plaintiff by running through a bush and over a six-foot drop towards Kohl's. (*Id.* ¶¶ 44-46). Plaintiff believed that Rizzo may have gone into the Kohl's, so Plaintiff entered the store, ascended the escalator, and walked towards the front entrance/exit. (*Id.* ¶¶ 47-49; Pl. 56.1 Stmt. ¶ 16). Plaintiff observed Rizzo near a wall by that entrance/exit, so he pushed a row of shopping carts forward to obstruct Rizzo and block him from exiting the store.

(Def. 56.1 Stmt. ¶¶ 49-50; Pl. 56.1 Stmt. ¶¶ 16-17; Ex. 5 at 00:20-00:26; Ex. C at 00:18-00:26). Plaintiff then approached Rizzo and told him that he was an off-duty police officer, he had already called 9-1-1, and that they were going to wait for the police to arrive. (Pl. 56.1 Stmt. ¶ 17). Rizzo told Plaintiff he was just kidding around and that he was going back to his friends. (*Id.* ¶ 18). He then took a step toward Plaintiff with his hands up in a fighting posture. (*Id.*). Plaintiff, who stood six feet, six inches tall and weighed 240 pounds, then pushed Rizzo, a considerably smaller, "lanky" teenager, to the side of the Kohl's vestibule, at which time—although mostly outside the range of the surveillance cameras—Plaintiff pinned Rizzo against a wall. (Ex. 5 at 00:26-00:32; Def. 56.1 Stmt. ¶ 55; Pl. Tr. at 42:7-42:12, 58:17-58:23). Plaintiff also smacked Rizzo with an open hand. (Pl. 56.1 Stmt. ¶ 19). Rizzo complained to Plaintiff that he could not breathe while Plaintiff had him pinned against the wall. (Def. 56.1 Stmt. ¶ 56).

Kohl's employees approached upon hearing the commotion, and the Store Manager, Kevin J. Greulich ("Greulich"), saw a "large older gentleman with his arms wrapped around a young male's neck in a head-lock type style." (Ex. 5 at 00:55-1:20; Pl. 56.1 Stmt. ¶¶ 21-22; Greulich Stmt. at 1). Plaintiff identified himself to Greulich as an officer with the NYPD and asked Gruelich to call 9-1-1 to let them know that he was inside the store with Rizzo. (Pl. 56.1 Stmt. ¶¶ 21-23). While Plaintiff showed Greulich his badge, he "continu[ed] to choke the young-male." (Greulich Stmt. at 1). Greulich told Plaintiff they needed to move, and as another Kohl's employee approached, Plaintiff decided to move Rizzo to the vestibule. (*Id.* at 1; Pl. 56.1 Stmt. ¶¶ 24-25; Def. 56.1 Stmt. ¶ 57).

The surveillance video captures the ensuing moments as Plaintiff moved Rizzo to the vestibule, the characterization of which the parties dispute. (Ex. 5 at 1:39-2:01; Ex. C at 1:41-1:59). Defendants contend that the video footage reveals that Plaintiff was holding Rizzo in a rear

chokehold, dragging him to the vestibule, with Rizzo unable to stand on his own feet. (Def. 56.1 Stmt. ¶¶ 71-73). Plaintiff contends that Rizzo resisted being escorted and so Plaintiff moved him to the vestibule with his right arm around the top of Rizzo's chest. (Pl. 56.1 Stmt. ¶ 27). Plaintiff sat Rizzo on a bench in the Kohl's vestibule. (Def. 56.1 Stmt. ¶ 74).

At approximately 11:28 a.m., Loucks and Officer Clark, who is not a party to this action, entered the Kohl's vestibule. (*Id.* ¶ 75; Pl. 56.1 Stmt. ¶ 30). Loucks spoke first with Plaintiff, who identified himself as an NYPD sergeant and explained that he apprehended Rizzo because he witnessed Rizzo committing a crime. (Pl. 56.1 Stmt. ¶¶ 31-32). After speaking with Plaintiff, Loucks observed Rizzo on the bench. (Def. 56.1 Stmt. ¶ 59). Loucks's declaration states that he observed Rizzo to be "out of breath, crying, red in the face, and had a dark red spot on his right cheek." (Loucks Decl. ¶ 14). Orengo had also spoken with Rizzo. (Pl. 56.1 Stmt. ¶ 40). Rizzo admitted pushing carts in front of moving vehicles and signed a statement in which he stated he did "not wish to pursue charges against anyone and I am not injured. We both acted inappropriately but I do not want this to be a criminal issue." (*Id.* ¶¶ 41-42; Def. 56.1 Stmt. ¶¶ 87-88; Rizzo Stmt. at 1).

Loucks interviewed Greulich who stated that Plaintiff identified himself to the Kohl's loss prevention team member as a police officer and then Plaintiff started to choke Rizzo up against a wall inside Kohl's. (Def. 56.1 Stmt. ¶ 68). Loucks then reviewed the Kohl's surveillance footage with the assistance of the Kohl's loss prevention team. (*Id.* ¶ 70; Pl. 56.1 Stmt. ¶ 39). Loucks directed Officer Clark to arrest Plaintiff, but because the incident occurred in Orengo's sector, Orengo was assigned to be the arresting officer. (Def. 56.1 Stmt. ¶¶ 76-77).

At approximately 11:45 a.m., Plaintiff was arrested in the vestibule of the Kohl's store. (*Id.* ¶ 15). As Plaintiff was being handcuffed, Loucks explained to Plaintiff that he was being arrested

for violating New York Penal Law § 121.11, criminal obstruction of breathing or blood circulation, a class A misdemeanor. (*Id.* ¶ 78; Pl. 56.1 Stmt. ¶ 47). The Information prepared and signed by Orengo charged Plaintiff with that crime. (Information at 1). On June 29, 2018, Judge Peter W. Green dismissed the criminal charge against Plaintiff and sealed the record, on the ground that the Information "does not identify [Plaintiff] as the perpetrator of the alleged crime . . . [and the] supporting deposition lacks an important element, a necessary element, that being identification of [Plaintiff] as the one who had committed the . . . alleged crime. . . ." (Just. Ct. Tr. at 16:3-16:13).[3]

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or

[3] As a result of being arrested and pursuant to the terms of the governing Collective Bargaining Agreement, Plaintiff was suspended without pay by the NYPD. (NYPD Mem. at 1; Root Decl. ¶ 3). Plaintiff was charged internally by the NYPD and ultimately resolved those charges by entering a guilty plea, which included an admission to the use of the NYPD definition of "a choke hold" in connection with the subject incident. (Root Decl. ¶ 4; Pl. Tr. at 127:6-128:9).

weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts. . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that

summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper"). This standard applies equally to claims for relief and affirmative defenses. *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010) ("The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . .").

## ANALYSIS

"A false arrest claim under Section 1983 'incorporates the elements of the state law where the arrest took place'—here, New York." *Johnson v. City of New York*, 18-CV-06256, 2020 WL 2732068, at *3 (S.D.N.Y. May 26, 2020) (quoting *Youngblood v. City of New York*, No. 15-CV-03541, 2019 WL 6216498, at *5 (S.D.N.Y. Nov. 21, 2019)). As such, to state a claim for false arrest under § 1983, Plaintiff must plead "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted). "[P]robable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010) (alteration in original)); *see also Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011); *McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *4 (E.D.N.Y. July 15, 2016) (explaining that "probable cause is a complete defense to a false arrest claim, even where the plaintiff was ultimately acquitted of the criminal charges") (internal quotation marks omitted)). Defendants argue that the eighth affirmative defense, probable cause to arrest, existed.[4] The Court agrees.

---

[4] Given the Court's determinations herein, it does not reach Defendants' arguments as to arguable probable cause or qualified immunity.

"Probable cause to arrest . . . exists when the officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Wierzbic v. Howard*, 836 F. App'x 31, 2020 WL 7038597, at *2 (2d Cir. Dec. 1, 2020) (internal quotation marks omitted). This standard is an objective one and evaluates "the reasonable conclusion to be drawn from the facts known to the officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). This standard requires that a court consider "the totality of the circumstances and . . . be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted). As probable cause is an objective question, the arresting officer's subjective belief as to its existence is immaterial; moreover, "[t]he arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged." *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 433 (S.D.N.Y. 2014). Rather, probable cause "to arrest the suspect of any crime" will suffice. *Coleman v. City of New York*, No. 03-CV-04921, 2009 WL 705539, at *3 (E.D.N.Y. Mar. 16, 2009); *see also Butler v. Brito*, No. 15-CV-09718, 2017 WL 2116687, at *3 (S.D.N.Y. May 15, 2017). Furthermore, it is well-settled that hearsay can "establish probable cause." *Hamilton v. City of New York*, No. 15-CV-04574, 2019 WL 1452013, at *11 (E.D.N.Y. Mar. 19, 2019) (quoting *United States v. Parcel of Prop.*, 337 F.3d 225, 236 (2d Cir. 2003)). If there is reason to doubt a witness's credibility, corroborating evidence can support probable cause. *See Brodie v. Fuhrman*, No. 07-CV-04212, 2010 WL 1189347, at *5-6 (E.D.N.Y. Mar. 29, 2010).

Plaintiff was charged with New York Penal Law § 121.11, criminal obstruction of breathing or blood circulation, a class A misdemeanor. "A person is guilty of criminal obstruction of breathing or blood circulation when, with intent to impede the normal breathing or circulation of the blood of another person, he or she . . . applies pressure on the throat or neck of such person . . . ." N.Y. Penal Law § 121.11(a). There is no requirement that the offender cause pain, trauma, or injury. Donnino, Practice Commentary, McKinney's Cons Laws of NY, 2021 Electronic Update, Penal Law § 121.11. Indeed, "[a] person can intend to impede another's normal breathing only as a method of asserting power and control over that person, without intending to cause physical injury." *People v. Peterson*, 988 N.Y.S.2d 271, 276 (App. Div. 2014). Plaintiff argues that he did not apply pressure on Rizzo's throat or neck, but rather around Rizzo's chest, and in any event, he did not injure Rizzo.

Defendants developed probable cause to believe that Plaintiff choked and dragged Rizzo to the vestibule based upon the information yielded from their investigation prior to arrest, which included interviewing Plaintiff, Rizzo, and other witnesses to the incident, as well as reviewing the surveillance video footage. Greulich described witnessing Plaintiff choke Rizzo. (Greulich Stmt. at 1). Plaintiff admits that Rizzo complained to him that he could not breathe when Plaintiff had him pinned against the wall. (Def. 56.1 Stmt. ¶ 56). The video footage could not be plainer or clearer. Defendants' assessment of the video surveillance reflected Plaintiff dragging Rizzo to the vestibule with his arm around Rizzo's neck (Ex. 5 at 1:39-2:01; Ex. C at 1:41-1:59).[5] Loucks observed Rizzo to be "out of breath, crying, red in the face, and had a dark red spot on his right cheek." (Loucks Decl. ¶ 14). Simply put, the reasonable conclusion to be drawn from the facts

[5] Although not relevant to the Court's analysis of the existence of probable cause, it is noteworthy that in connection with Plaintiff's suspension, the NYPD Duty Captain described Plaintiff in the surveillance video as "dragging Mr. Rizzo with *his arm around Mr. Rizzo's neck* and upper chest area." (NYPD Mem. at 3 (emphasis added)).

known to Defendants at the time of the arrest was that there was probable cause to believe that Plaintiff committed the crime charged of obstruction of breathing.[6]

Plaintiff further argues that, acting in his capacity as an off-duty police officer, his arrest of and use of force against Rizzo were privileged under New York law. Plaintiff contends, in other words, that because he effectuated the arrest as a police officer who witnessed the commission of a crime, he was justified not only in apprehending Rizzo, but also in the force used to do so. While arresting officers have no duty to investigate exculpatory defenses offered or to assess the credibility of unverified claims of justification, "under some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause." *Jocks*, 316 F.3d at 135-136.

It cannot be disputed that Plaintiff in this case was justified in attempting to apprehend Rizzo for his behavior pushing shopping carts into moving traffic. Certainly, the Court lauds Plaintiff for trying to do the right thing on his own, off-duty time, and preventing a circumstance in which someone could have been seriously injured or even killed. However, and even though Rizzo was initially resistant and attempted to flee, once Rizzo was no longer resisting, the use of a chokehold was an unreasonable use of force—a fact which Plaintiff apparently acknowledged as part of his guilty plea to the internal charges lodged against him by the NYPD.

A police officer cannot use a chokehold on someone who does not pose a threat of any kind. *United States v. Livoti*, 196 F.3d 322, 327 (2d Cir. 1999) (upholding criminal conviction for excessive force when officer put man in a chokehold which lasted for one minute and rendered him unconscious, when the evidence showed that the NYPD prohibited chokeholds under any

[6] The Court agrees with Defendants that summary judgment is warranted regardless of whether probable cause existed as to the specific charge of obstruction of breathing and based upon the facts available to Defendants, probable cause existed to arrest Plaintiff for other crimes and/or violations, such as assault, menacing, harassment, or disorderly conduct. (*See* Def. Br. at 13-14).

circumstances); *see also Jackson v. Tellado*, 236 F. Supp. 3d 636, 664-65 (E.D.N.Y. 2017) (arresting officer not entitled to qualified immunity despite officer's testimony he merely gave arrestee a "bear hug" in light of plaintiff's testimony that he was placed in a chokehold); *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 540 (6th Cir. 2015) (finding that an officer violated a plaintiff's constitutional rights when he choked him after plaintiff had been placed on the bed, handcuffed to it, and was surrounded by multiple officers, and stating that "[t]he use of a chokehold on an unresisting—and even an initially resistant—detainee violates the Fourteenth Amendment"); *Magrum v. Meinke*, 332 F. Supp. 2d 1071, 1082 (N.D. Ohio 2004) (stating that an officer who "flipped [plaintiff] to the ground and choked him two times, the second time while [plaintiff] was not resisting . . . violat[ed] . . . clearly established law").

Plaintiff cites no case, and the Court is unable to locate any, for the proposition that an officer is immune from arrest when he uses excessive force, such as the chokehold used herein. Rather, "[a]n arresting officer who uses excessive force will be liable for assault and battery." *Woo v. City of New York*, No. 93-CV-07007, 1996 WL 457337, at *12 (S.D.N.Y. Aug. 14, 1996).

Probable cause to arrest depends upon the totality of the circumstances surrounding the arrest. *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *7 (S.D.N.Y. Dec. 18, 2020). The totality of the circumstances described herein make clear that probable cause existed for Defendants to believe with reasonable certainty that "a crime" was committed. Under the circumstances of this case, and despite Defendants' knowledge that Plaintiff was a police officer, there was probable cause to arrest Plaintiff. *Cf. LaFontaine v. City of New York*, No. 08-CV-01555, 2009 WL 3335362, at *6 (S.D.N.Y. Oct. 14, 2009) (officer's arrest of plaintiff law enforcement officer was based upon probable cause where officer had reason to believe plaintiff displayed weapon for impermissible purpose regardless of plaintiff's privilege to carry the weapon).

Based upon the entirety of the record, there is no genuine issue of material fact that a person of reasonable caution would be warranted in the belief that Plaintiff committed a crime. As "upside down" as this case may be, where an officer is the one arrested for apprehending a perpetrator (who clearly could have caused serious physical injury to others) while the perpetrator goes free, Defendants had probable cause to arrest Plaintiff and are therefore entitled to judgment as a matter of law. The narrow issue raised by the motion for summary judgment associated with this single claim for relief is being adjudicated in accordance with the burden of proof applicable to the affirmative defense pressed by Defendants and no other basis. Given this strict parameter, the result herein is proper, albeit not entirely palatable.

## CONCLUSION

Based upon the foregoing, Defendants' motion for summary judgment is GRANTED and the Complaint is dismissed with prejudice. The Clerk of the Court is respectfully directed to terminate the pending motion at Doc. 27, and to close this case.

**SO ORDERED:**

Dated: White Plains, New York
August 20, 2021

PHILIP M. HALPERN
United States District Judge